**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **DYNO NOBEL, INC.,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | NO. 5:21-cv-00322-KKC-MAS |
| ) | |
| **BOB JOHNSON, et al.** ) | |
| ) | |
| Respondents. ) | |
| ) | |

## MEMORANDUM OPINION & ORDER

Before the Court is a motion to compel filed by Petitioner Dyno Nobel, Inc. ("Dyno") [Docket Entry ("DE") 1] against Respondents Bob Johnson ("Johnson"),[1] Brandywine Explosives & Supply, Inc. ("Brandywine"), Stratified, LLC ("Stratified"), Tom McMahan, Ross McMahan, and Morgan Miller (collectively, "Respondents") seeking the enforcement of certain subpoenas ("Subpoenas") [DEs 1-5 – 1-9]. More specifically, Dyno seeks several categories of documents from Respondents relevant to a case pending in the United States District Court of Utah. Judge Caldwell has referred the motion to the undersigned for resolution as a non-dispositive pretrial matter pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a).

For the reasons set forth below, the undersigned grants Dyno's motion in substantial part and on the specific terms outlined herein. The parties may appeal this decision as directed.

---

[1] The Court notes that while Johnson is named as a party to the current dispute, the Court finds no legal justification for his inclusion. Dyno has not presented any subpoena served against Johnson at issue. Moreover, to the extent that Dyno is seeking information or cooperation from Johnson in discovery, such concerns must be raised in the pending action in the District of Utah where Dyno and Johnson are parties.

1

## I.   RELEVANT BACKGROUND

The source of the dispute between the parties is best set forth in the complaint pending in federal court in Utah. [DE 1-2]. There, Dyno alleges that Johnson was a former employee of Dyno who signed an employment agreement containing certain post-employment restrictions. As with all such disputes, Johnson left Dyno's employment and, according to Dyno, began taking steps in violation of his employment agreement. Namely, Johnson began working with Brandywine, a distributor for Dyno, and the other individually named Respondents to form a competing business, Stratified, an act that allegedly violates Johnson's employment agreement with Dyno.

The Subpoenas at issue are targeted at Brandywine, Stratified, and the other individually named Respondents who all have roles within Brandywine and/or Stratified. The Subpoenas seek documents surrounding the formation of Stratified (*i.e.*, corporate formation documents, correspondence between the principals, etc.), documents discussing any contracts or bid proposals involving Johnson, compensation paid to Johnson, communications between Johnson and the other Respondents, etc. [*See* DEs 1-5 – 1-9].

Dyno, a Utah company, seeks these documents from Respondents and requests that these Respondents produce the documents in Salt Lake City, Utah. Respondents objected, resulting in Dyno filing the current action. [DE 1 (Motion to Compel)]. Upon conclusion of briefing [DEs 18, 19], Judge Caldwell referred the motion to the undersigned for resolution [DE 20].

## II.   ANALYSIS

In response to the Subpoenas and Dyno's motion to compel, Respondents' raise an issue of proper service as well as substantive objections. The Court will first address the possible service issue before turning to the substantive objections. The Court will also address Dyno's request for sanctions.

A. **SERVICE ON BRANDYWINE AND ROSS MCMAHAN, WHILE POSSIBLY DEFICIENT, DOES NOT DEFEAT THE SUBPOENAS.**

Respondents initially contest proper service over Respondents Brandywine and Ross McMahan. "The majority of lower courts … have held that Rule 45 requires personal service." *OceanFirst Bank v. Hartford Fire Ins. Co.*, 794 F. Supp. 2d 752, 753 (E.D. Mich. 2011) (collecting cases supporting the majority approach). FED. R. CIV. P. 45(b) ("Serving a subpoena requires delivering a copy to the named person"). "A subpoena under Rule 45 is not properly served by email or fax." *S.E.C. v. Art Intellect, Inc.*, No. 2:11–CV–357, 2012 WL 776244, *3 (D. Utah Mar. 7, 2012). *See also Shulman v. Amazon.com.KYDC LLC*, No. 13-cv-5-DLB, 2014 WL 4103528 (E.D. Ky. Aug. 15, 2014). Both parties agree as much. Thus, the only issue is simply whether Brandywine or Ross McMahan received personal service.

For Ross McMahan, the affidavit of the process server utilized by Dyno attests that his subpoena was provided by "personal service to Ross McMahan". [DE 1-8, Page ID# 91]. Such evidence constitutes proof of service per Rule 45(b)(4). Dyno argues this is more than sufficient. Yet, Ross McMahan has filed an affidavit contesting service, claiming the subpoena directed to him was never served on him. Per his affidavit, the first time he saw the subpoena directed to him was via email from his counsel a couple months after alleged service. Ross McMahan contends that his affidavit competing with the process server's affidavit results in a failure of proper service.

For Brandywine, the affidavit of the process server attests that the subpoena was served on Mary Link ("Link"), the office manager for Brandywine. Again, like with Ross McMahan, Dyno contends that such service is sufficient. Brandywine counters that service was defective because Link is not an officer, manager, or registered agent of the company. Brandywine's argument suggests service of a company for Rule 45 should function much like service under Rule 4.

3

*Blankenship v. Superior Controls, Inc.*, No. 13-cv-12386, 2014 WL 12659919 (E.D. Mich. Oct. 2, 2014) (analogizing rules for service for a subpoena on a corporation via Rule 4).

In the end, the Court does not need to delve deep into any of these nuances. "[I]n circumstances where the service of the subpoena was not personal or other procedural requirements of Rule 45 were arguably not met, but the party did actually receive the subpoena in a timely fashion and was not prejudiced by the method of service, it is appropriate for the court to overlook any technical deficiencies and explore the merits of the discovery request." *Gist v. Pilot Travel Centers, LLC*, No. 3:10-mc-95, 2011 WL 4055788 (M.D. Tenn. Sept. 12, 2011) (citing *Powell v. Time Warner Cable, Inc.*, No. 2:09-cv-600, 2010 WL 5464895, *3 (S.D. Ohio Dec. 30, 2010); *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, (S.D. Ohio May 6, 2011)). *See also Annabel v. Heyns*, No. 2:12–CV–13590, 2014 WL 1207802, at *2 n.1 (E.D. Mich. March 24, 2014) (emphasizing that Rule 45's service requirement is focused on notice and deeming service by certified mail sufficient); *Flagg v. City of Detroit*, No. 05-74253, 2010 WL 30701014 (E.D. Mich. Aug. 4, 2010) ("As one court has observed, the 'obvious purpose' of this provision 'is to mandate effective notice to the subpoenaed party, rather than slavishly adhere to one particular type of service.'") (quoting *Hall v. Sullivan*, 229 F.R.D. 501, 504 (D. Md. 2005)).

Here, both Ross McMahan and Brandywine were provided notice of the Subpoenas (whether in person, through an agent, and/or through counsel) and timely objected. The Court will fully consider those objections below. In other words, neither Ross McMahan nor Brandywine will suffer any prejudice to the extent service was arguably deficient. Thus, the Court rejects the argument that the possibly defective service requires it to quash the Subpoenas.

**B.     DYNO HAS FULLY ADDRESSED ALL OF RESPONDENTS' OBJECTIONS.**

The Court next turns to Respondents' substantive objections to the Subpoenas. Respondents raise the following objections: (1) certain general objections that apply to all requests;

(2) compliance for the Subpoenas violates the 100-mile rule requirement in Rule 45(c)(2)(A); (3) Dyno did not provide a copy of Utah District Court's DUCivR 37-1; (4) Dyno made incorrect factual assertions; (5) the Subpoenas seek confidential information; (6) compliance creates an undue burden on Respondents; (7) Dyno's request has vague, ambiguous, and overbroad terms; (8) Dyno seeks documents not in the possession of the Respondents; and (9) Dyno failed to include a temporal limitation for some of its requests.

Dyno responded with possible resolutions of these objections both via letter to Respondents back in September 2021 [DE 1-15, Page ID# 152-81] as well as in their motion [DE 1-1, Page ID# 8-11]. Respondents, although fully addressing the 100-mile rule requirement, elected not to address the other objections.

The Court addresses each objection below.

**1.      General Objections**

Before addressing objections raised in response to specific requests in the Subpoenas, Respondents each include a list of general objections (some of which are repeated specifically with each request). "A party objecting to a discovery request must particularly state the objection grounds; a boilerplate objection has no legal effect." *Davis v. American Highwall Mining, LLC*, No. 6:19-cv-96, 2020 WL 5494520 (E.D. Ky. Sept. 11, 2020) (collecting several authorities in support). *See also See Wesley Corp. v. Zoom T.V. Products, LLC*, No. 17-10021, 2018 WL 372700, at * 4 (E.D. Mich. Jan. 11, 2018) ("Defendants' 'objections' to these discovery requests are the typical boilerplate objections known and detested by courts and commentators—and receiving parties—around the nation."). The Court will only evaluate objections as specifically raised with the specific requests. Stated conversely, the Court will ignore general, boilerplate objections meant to apply broadly without context to each request.

### 2.       The 100-Mile Rule Requirement

Dyno has served the relevant Subpoenas under FED. R. CIV. P. 45.  Per that Rule, compliance to produce documents must occur "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(2)(A).  Dyno asks Respondents to comply with the Subpoenas in Salt Lake City, Utah, far greater than 100 miles from where any of the Respondents reside.  Although such a fact would seem simple and fatal to Dyno's sought relief, the analysis is far from that simple.

Dyno does not contest that compliance for the Subpoenas is in violation of the 100-mile requirement referenced above.  Rather, Dyno suggests the 100-mile requirement in Rule 45 is malleable based upon *Westlake Vinyls, Inc. v. Lamorak Ins. Co.*, No. 3:18-cv-12-JHM-LLK, 2018 WL 4516005 (W.D. Ky. Aug. 21, 2018).  The *Westlake* court faced a third-party subpoena relevant to an ongoing arbitration pending in Pennsylvania.  At the outset and throughout the opinion, the court highlights that "[a]n arbitrators' subpoena is not the same thing as a subpoena issued by a district court." *Id*. at *7 n.5.  Yet, the court attempts to draw upon Rule 45 as a framework for its analysis.  For example, the court eschews the 100-mile requirement in Rule 45(c)(2)(A) in favor of the practical fact that most parties will produce responsive documents electronically, negating the need for the 100-mile rule. *Id*. at n. 4.  Considering *Westlake*'s repeated limitations to an arbitrator's subpoena, the Court is hard-pressed to draw legal inferences from such a decision.

However, there is a line of cases that ignore the 100-mile requirement in Rule 45(c)(2)(A). For example, in *In re: SII Liquidation Co.*, the court held that "courts generally find that the ability to mail the documents, without requiring a personal appearance, eliminates the geographic obstacle."  No. 10-60702, 2-15 WL 1365591 (N.D. Ohio March 20, 2015).  Some other courts have agreed with this approach, favoring the practicality of modern electronic document production while ignoring the plain language of Rule 45. *See*, *e.g.*, *Elsom v. Global Life &*

6

*Accident Ins. Co.*, 2018 WL 4092020, *2 (D. Or. 2018) ("[C]ases from this circuit and others ... have held that Rule 45(c)(2)(A)'s 100-mile boundary does not apply where, as here, the subpoenaed person is not instructed to also appear at the production location along with the requested documents.") (citations omitted); *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, 2014 WL 3573400, *4 (S.D. Ca. 2014) ("Although the challenged subpoenas seek production of documents at a designated location in San Diego, California, the subpoenas do not require any travel by the third parties. Accordingly, the Court finds that Defendant's challenge to the validity of the subpoenas on the ground that they require compliance beyond the geographical limits specified in FRCP 45 is without merit.").

Likewise, there are also countless cases that enforce the 100-mile requirement in Rule 45(c)(2)(A). *See*, *e.g.*, *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 630 (C.D. Cal. 2018) (holding that under the plain language of Rule 45(c), 100-mile rule applies to document subpoenas); *D'Souza v. Marmaxx Operating Corp.*, No. 15-CV-00256-DCG, 2017 WL 1322243, at *6 (W.D. Tex. Apr. 7, 2017) (ordering the parties to confer and find a location for compliance with document production within 100 miles of the subpoenaed party); *Sams v. GA W. Gate, LLC*, 316 F.R.D. 693, 696–97 (N.D. Ga. 2016) (modifying the subpoena to a location within 100 miles of compliance); *Westmore Equities, LLC v. Vill. of Coulterville*, No. 3:15-CV-241-MJR-DGW, 2016 WL 695896, at *2 (S.D. Ill. Feb. 22, 2016) (upholding the 100-mile requirement while fully acknowledging the practical realities of modern document production).  The plain language of Rule 45 as well as the Advisory Committee Notes would certainly support this position.  FED. R. CIV. P. 45 (Advisory Committee Notes 2013) ("Under the current rule, parties often agree that production, particularly of electronically stored information, be transmitted by electronic means.

7

Such arrangements facilitate discovery, and nothing in these amendments limits the ability of parties to make such arrangements.").

Ultimately, the Court does not need to be convinced one way or the other. Even if the Court were to agree with Respondents' better reasoned argument, Rule 45(d)(3)(ii) provides that a Court may modify a subpoena. *See* FED. R. CIV. P. 45(d)(3)(ii) (a district court must "quash or **modify** a subpoena that ... requires a person to comply beyond the geographical limits specified in Rule 45(c)") (emphasis added). *Cf. CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 713-14 (D.S.C. 2017) (even if the 100-mile rule applies to document subpoenas, the proper remedy is not to quash the subpoena but to modify the subpoena to allow the recipient "to produce the records either electronically or at a physical location closer to" the recipient); *Sams v. GA W. Gate, LLC*, 316 F.R.D. 693, 696-97 (N.D. Ga. 2016) (although party violated the 100-mile rule when issuing document subpoenas, "this violation does not require that the subpoena be quashed; the court may modify the subpoena ... to allow service of responsive documents by email").

Here, when Respondents raised the objection that the Subpoenas had a place of compliance in violation of Rule 45(c)(2)(A), Dyno offered the compromise position that the place of compliance could be the office for Dyno's counsel in Louisville, Kentucky, a location within the 100-mile requirement. [DE 1-15, Page ID# 153]. The Court believes this to be a fair compromise that both addresses Respondents' concerns (compliance with the plain language of Rule 45 and avoidance of any perceived actions directed towards Utah) and Dyno's concerns (no additional delay in its discovery efforts).

The Court will thus modify the Subpoenas to expressly require compliance at the office of Dyno's counsel in Louisville, Kentucky.

### 3. Copy of DUCivR 37-1

Utah District Court's local rule, DUCivR 37-1, requires "parties [to] make reasonable efforts without court assistance to resolve a dispute arising under FED. R. CIV. P. 26-37 and 45." DUCivR 37-1 also requires, as part of that rule, that a copy of DUCivR 37-1 be provided to the targeted party.

Respondents objected on grounds that Dyno failed to provide Respondents a copy of DUCivR 37-1. [*See*, *e.g.*, DE 1-11, Page ID# 120-27]. Dyno then provided a copy of DUCivR 37-1 to Respondents on September 21, 2021. [DE 1-15, Page ID# 152-81]. Consequently, the objection is moot.

### 4. Incorrect Factual Assumptions

Respondents also object to several of the specific requests in the Subpoenas concerning certain factual assertions made by Dyno. For example, Stratified objects to the second request as follows:

> Stratified further objects on the ground the request contains incorrect factual assumptions and is premised on allegations that Stratified denies. By way of example only, Stratified denies it or its officers, members, directors, agents, or, to the best of its knowledge, its employees, formed or participated in the formation of any entity "for the purpose of competing with Dyno" or for the purpose of "entering into" the explosives industry. In this regard, and without limitation, Stratified denies "BEX," as described in Dyno's subpoena papers, or any similar entity, was ever formed. Further, Stratified denies it was formed "for the purpose of competing with Dyno" or for the purpose of "entering into" the explosives industry.

[*See*, *e.g.*, DE 1-11, Page ID# 120-27].

To the extent Respondents are objecting on grounds that they disagree with Dyno's characterization of the possible facts at issue, those are not evidentiary or substantive objections; rather, these are merely contentious points made by the parties. The Court has no opinion on the truth of either side's characterization of the events, but certainly does not find that Respondents'

9

objections to Dyno's characterization of the facts are a basis for refusing to produce responsive documents.

Moreover, Dyno has limited the request to concern entities for which Johnson was involved, meaning the information sought is targeted to entities directly at issue in the Utah litigation between Dyno and Johnson. [DE 1-15, Page ID# 152-81]. The Court agrees that this limitation is necessary, and such limitation resolves any remaining concerns raised in Respondents' above-cited objection.

### 5. Confidential Information

Respondents next argued that the Subpoenas seek information that is "confidential business information regarding non-parties and/or third parties." [*See*, *e.g.*, DE 1-11, Page ID# 120-27]. Dyno, in response, provided a copy of the standard stipulated protective order utilized by the District of Utah, which specifically includes protection for materials provided by non-parties and/or third parties. [DE 1-15, Page ID# 152-81 (¶ 14 at Page ID # 178)]. Again, Dyno has fully resolved Respondents' concerns.

### 6. Undue Burden

Respondents complain that any compliance with the Subpoenas places an undue burden on third parties. Although Respondents provide no explanation or specificity as to the undue burden at issue, the Court will assume Respondents are referring to the cost of complying with the Subpoenas. The Court appreciates the possible cost of compliance, but such is the nature of business and litigation. Regardless, Dyno has offered to cover all costs of compliance. Respondents' objection for undue burden is fully resolved.

### 7. Vague, Ambiguous, and Overbroad Terms

Respondents claim certain requests are "vague, ambiguous, and overbroad." Often, Respondents insert these objections without any description or context, frustrating any review by

the Court.  *See Wesley Corp. v. Zoom T.V. Products, LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018) ("When objections lack specificity, they lack effect: an objection that does not explain its grounds (and the harm that would result from responding) is forfeited.").

However, Respondents are specific with this objection concerning the first request made to all parties in the Subpoenas.  That request seeks the following:

> "Please produce all documents in your custody, possession, or control: (1) that evidence, consist of, or relate in any way to any proposals or bids of any kind that Johnson submitted to Brandywine (or any of your officers, members, employees, directors, or agents), on behalf of himself or any entity other than Dyno, during the period of time from April 13, 2018 to the present, relating to Dyno customers or clients, or potential Dyno customers or clients[.]"

[*See*, *e.g.*, DE 1-5, Page ID# 73].  Respondents protest that "neither 'proposals or bids' nor 'potential Dyno customer or clients' is defined" leaving such terms vague, ambiguous, and overbroad.  [*See*, *e.g.*, DE 1-11, Page ID# 122].

Dyno responded by providing specific definitions for those terms.  "For purposes of this objection, I will clarify that 'proposal or bids' means any offer, plan, suggestion, or solicitation, especially a formal or written one, submitted by Johnson, and 'potential Dyno customers or clients' means any "individual or entity known to Johnson to have been identified as a potential customer or client of Dyno."  [DE 1-15, Page ID# 155].

Considering the additional definitions addressing Respondents concerns and Respondents' failure to address any such issue in their response, the Court finds this objection resolved.

    **8.**    <u>**Possession, Custody, or Control of Documents**</u>

Respondents frequently object to certain requests in the Subpoenas because those requests seek documents not in the possession of the given Respondent.  Rule 45 provides that a responding party must "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control."  FED. R. CIV. P. 45(a)(1)(iii).  To the extent the

11

Subpoenas seek documents from a particular Respondent and the responsive documents are not in that Respondent's possession, custody, or control, then that Respondent has no obligation to produce those documents. However, if the contrary is true, the Respondent must provide those documents. The Court entrusts and expects this is a distinction all parties can easily navigate.

### 9. Temporal Limitations

Respondents rightfully criticize Dyno's Subpoenas for failing to provide any kind of temporal limitation for some of its requests. [*See*, *e.g.*, DE 1-11, Page ID# 120-27]. In response, Dyno has limited the Subpoenas to seek documents from April 13, 2018, to present. [DE 1-15, Page ID# 152-81]. Based upon the Court's review of the docket in the Utah litigation and brief understanding of the dispute, the Court finds this temporal limitation to be fair and reasonable.

## C. RESPONDENTS BEHAVIOR IS FAR FROM SANCTIONABLE.

The Court will deny Dyno's request for sanctions. Respondents appear to be aggressively litigating this dispute and nothing more. Respondents' concerns over proper service and the application of the 100-mile rule discussed above are fair grounds for serious disputes and concern. The Court cannot find issue with Respondents' tactics. The Court is confident, however, both that the decision here resolves those concerns of Respondents, and that Respondents will move forward in good faith in responding to the Subpoenas as here modified.

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Dyno's motion to compel [DE 1] **in substantial part**, with the following modifications to the Subpoenas:

1. Respondents must comply with the Subpoenas by producing documents to Benjamin Riddle at Steptoe & Johnson PLLC, 700 N. Hurstbourne Parkway, Suite 115, Louisville, Kentucky 40222, Benjamin.Riddle@steptoe-johnson.com.

2. Dyno shall take all necessary steps to ensure any confidential information as designated by Respondents is protected pursuant to the Utah District Court's standard protective order.

3. Dyno shall compensate Respondents for all reasonable costs incurred in fully responding to the Subpoenas.

4. The terms "proposal or bids" in the first request in the Subpoenas shall be defined as "any offer, plan, suggestion, or solicitation, especially a formal or written one, submitted by Johnson."  Moreover, the terms "potential Dyno customers or clients" are defined as "any individual or entity known to Johnson to have been identified as a potential customer or client of Dyno."

5. All requests in the Subpoenas shall be limited temporally from April 13, 2018 to the present.

The undersigned enters this Memorandum Opinion and Order as one resolving a non-dispositive pretrial discovery motion pursuant to 28 U.S.C. § 636(b)(1)(A).  **Within fourteen (14)** days after being served with a copy of this Memorandum Opinion and Order, either party may appeal the decision to Judge Caldwell pursuant to § 636(b)(1)(A) and FED. R. CIV. P. 72(a).  Failure to timely object may result in waiver of any such objections. *See also Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984).

Upon the filing of any such timely objections, the Clerk of Court **SHALL** submit this matter to Judge Caldwell for review in accordance with § 636(b)(1)(A) and Rule 72(a). Alternatively, upon expiration of the objection deadline without filing of the same, the Clerk **SHALL** cause this case to be administratively closed and stricken from the Court's active docket.

Entered this the 18th day of February, 2022.

